MARY. A. McDONALD v. THE MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.

*Requests to charge—Estoppel—Weight of evidence—Railroad companies—Action for killing stock.*

1. By requesting the submission of a disputed question of fact to the jury, the party preferring the request estops himself from objecting that there was no evidence to establish said fact.

2. A request, in a suit against a railroad company for killing stock, for an instruction that the plaintiff has failed to show, by a preponderance of evidence, that the stock were killed by negligence of the defendant, or that plaintiff is entitled to recover therefor, and that plaintiff has failed to make out a case, wherefore the verdict should be for the defendant, is not sufficient to apprise the circuit judge that the defendant stood upon the claim that there was no evidence tending to sustain plaintiff's case, and it is clearly without the province of the court to withdraw the case from the jury upon the claim that the preponderance of evidence was with the defendant.

3. It was for the jury to say whether the positive testimony of a witness, that the bars used to close the opening through which the cattle were claimed to have gotten upon defendant's track were up on the day the cattle were killed, should be accepted, in view of the fact that his testimony upon the question of the bars being up at other times during the summer was directly disputed by the testimony of other witnesses.

Error to Schoolcraft. (Steere, J.) Argued April 5, 1895. Decided July 2, 1895.

Case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*C. W. Dunton* and *E. C. Chapin,* for appellant.

*V. I. Hixson,* for plaintiff.

MONTGOMERY, J. Plaintiff recovered a verdict and judgment for the value of three young cattle killed on the track of defendant company on the 7th of September, 1893. The track was fenced except at a point known as "St. Jacques' Spur," where cars were being loaded. At another place the fence was down, and at another place bars were kept. The court instructed the jury that if the cattle entered the spur the plaintiff could not recover, and also that if the cattle came on the track at the opening called the "bars" the defendant would not be liable if its employés had examined the bars the day before at 4 o'clock in the afternoon and found them up in good order, and they were let down by some other person. The jury found, in answer to a special question, that the cattle came into defendant's right of way at the bars. It is now insisted by defendant that there was no evidence to show that the bars were down on the occasion when the cattle were said to have gone upon the track.

It does not appear that the record contains all the testimony in the case. Furthermore, it appears that the defendant requested the court to charge the jury:

"If the cattle in question came on the track at or through the bars, the defendant would not be liable if they examined them the day before at 4 o'clock and found them in good order, and they were let down by some other person; and in that case your verdict should be for the defendant."

By this request the defendant sought to have this question submitted to the jury.

But it is said that defendant sought to have the case taken from the jury wholly. The only manner in which this was done was by the first request of counsel, which reads as follows:

"In this cause the plaintiff has failed to show, *by a preponderance of evidence,* that the stock in question was killed by the negligence of the defendant, or that she is entitled to recover therefor, and they have failed to make

out a case, wherefore your verdict should be for the defendant."

This request, certainly, was not sufficient to apprise the circuit judge that the defendant stood upon the claim that there was *no evidence* tending to sustain plaintiff's case, and it is clearly without the province of the court to withdraw the case from the jury upon the claim that the preponderance of evidence was with the defendant.

But, aside from this, I think the merits of the question are equally clear. It is true defendant called as a witness *Mathew Brearley, its section foreman,* who testified as follows:

"It was my business to see that the fence was up along this place. I know where the bar-way was west of St. Jacques' spur. I passed there between 4 and 5 o'clock on the evening of the 7th of September. I was walking at the time back from Manistique. The bars were up, and in good condition,—full up to the height of the fence. * * * Had been working for the defendant from May 2 until after the cattle were killed. I had passed the opening nearly every day during that time, and never saw the bars open but once, and that time I closed them."

On cross-examination he testified that he had been working on this section from the 2d of May and up to the time the cattle were killed, and passed there nearly every day. He was then asked:

"Are you willing to swear that these bars were not down during that time?

"*A.* I never saw them down but once.

"*Q.* Only once?

"*A.* Only once that I am sure of.

"*Q.* Do you take particular notice of these things?

"*A.* I generally do.

"*Q.* And when you passed on the 5th would you be willing to say they were not down?

"*A.* I would not be positive as to the date.

"*Q.* What would you do when you found them down?

"*A.* Put them up.

"*Q.* And if you passed there on the 6th and saw them down you would be willing to swear you put them up?

"*A.* I don't know; I may have passed them without putting them up.

"*Q.* You found the bars down on the 7th?

"*A.* They were not down when I was walking on the track."

Plaintiff called as a witness Andrew McDonald, who testified that he had not seen the opening since the 3d of the month of September, but that he had passed the opening where the cattle were found a great many times during the summer, and never saw any bars up there until after the cattle were killed. Andrew Green testified, in answer to questions, as follows:

"*Q.* What was the nature of the opening west of St. Jacques' spur?

"*A.* There was an opening along there, and there had been a pair of bars put up there.

"*Q.* What can you say as to the bars being closed when you passed up and down there?

"*A.* They were always open until after these cattle came on; that is, every time I noticed them."

Lafayette England testified:

"I passed up and down there frequently during August and September, probably 50 times during the summer.

"*Q.* Did you ever see any bars up there in passing along there?

"*A.* I never saw any bars up there; I have always found them down.

"*Q.* That is true of both places, east and west of the spur?

"*A.* Yes, sir."

And, further:

"You came down on the 6th and went back on the 7th?

"*A.* Yes, sir.

"*Q.* About what time were you through there on the 7th?

"*A.* About 1 o'clock.

"*Q.* And there were no bars up there then?

"*A.* No, sir.

"*Q.* The bars were in the same condition on the 6th of September as they were on the 7th?

"*A.* Yes, sir"

I think it very clear that this testimony raised a question of fact for the jury. It is true the defendant's witness testified that the bars were up at 4 o'clock on the 7th, but there is no testimony that there was anybody whose duty it was to put them up after 1 o'clock on the 7th, when the witness England testifies that they were down. This testimony clearly tended to impeach the recollection or veracity of the witness Brearley. According to his testimony, the bars could not have been down, except on very rare occasions, whereas the other witnesses testified that the bars were left down constantly; and, on cross-examination, when asked if, if he passed there on the 6th and saw the bars down, he would be willing to swear that he put them up, he replied that he might have passed them without putting them up. In my judgment it was for the jury to say whether his positive testimony that they were up on the 7th should be accepted in view of the fact that his testimony upon this question of their being up at other times during the summer was so directly disputed by the testimony of other witnesses.

It is also contended that it is equally consistent from all the testimony that the cattle may have entered the spur, and that the defendant is not liable until it is clearly established at which point they entered. But upon this point the defendant's witness Brearley testified that he tracked the cattle from the bars to where they were killed, that he examined the tracks along by the spur to see whether there were any cattle tracks there, and that he saw no fresh tracks, no tracks that he could see plainly, that he knew from the tracks that the cattle came in from the bars, and was pretty sure of it, and that that is what he thought at the time.

It is also assigned as error that the circuit judge submitted to the jury the question of whether the cattle came upon the right of way at the place on the other side of the spur, or at the bars in question. This could not have damaged the defendant, as the jury found that the cattle

came on at the bars, and, as we have pointed out, there is testimony to support this finding.

I think no error was committed in submitting this case to the jury, that the charge of the court fairly covered the law of the case, and that the judgment should be affirmed.

The other Justices concurred.